Julius EPSTEIN, Plaintiff-Appellant,

v.

Stanley RESOR, Secretary of the Army; Department of the Army; Department of Defense, Defendants-Appellees.

No. 24275.

United States Court of Appeals, Ninth Circuit.

Feb. 6, 1970.

Michael L. Klynn (argued), Roger L. Mosher, of Wilson, Mosher & Martin, Palo Alto, Cal., for plaintiff-appellant.

Leonard Schaitman (argued), Morton Hollander, Attys., Dept. of Justice, William D. Ruckelshaus, Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for defendants-appellees.

Michael Traynor (argued), Donatas Januta, Paul N. Halvonik, ACLU, San Francisco, Cal., Preble Stolz, Berkeley, Cal., amicus curiae.

Before MERRILL, KOELSCH and HUFSTEDLER, Circuit Judges.

MERRILL, Circuit Judge:

This suit was brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a) (3) [1] to enjoin appellee, as Secretary of the Army, from continuing to withhold from appellant documents contained in an Army file.

Appellant, a historian, is research associate at Stanford University's Hoover Institution on War, Revolution and Peace. His special interest concerns war refugees. He is preparing a book on the forced repatriation of anti-Communist Russians following World War II, and for this purpose desires to examine the Army file designated "Forcible Repatriation of Displaced Soviet Citizens—Operation Keelhaul."

This file was generated over twenty years ago by the Allied Force Headquarters of World War II. That agency had classified the entire file as top secret. At the close of the war, the British Government received the original and the United States Department of the Army received a photoprint copy. The file contains a number of individual documents, some of which are of British or combined United States-British origin. Upon its receipt the Army maintained the top secret classification under Executive Order 10501 and it has not yet been declassified.

After storage as a historical record with the Army the file was finally

---

1. " * * * [E]ach agency, on request for identifiable records made in accordance with published rules * * * shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action." For a discussion of the Act, see Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761 (1967).

stored with the National Archives and Records Service, General Services Administration. The classification of the file was reviewed by the Army in 1954 and the classification was retained. In 1967 appellant sought declassification. The file again was reviewed and again the classification was retained.

In February, 1968, appellant again requested release of the file. In response he was advised by the Adjutant General of the Army that a complete re-examination of the file had been directed; that the 1967 action had been based on the contents of the file in its entirety; that the current review of the file was proceeding on a paper-by-paper basis. In March, 1968, this action was brought.

Appellees sought summary judgment. In support of their motion they filed an affidavit of the Adjutant General. That affidavit, under date of May 29, 1968, stated that the paper-by-paper review of the file was still in progress. It went on:

"This review of individual papers has been completed with the Department of the Army and coordination is now in progress with the Joint Chiefs of Staff and the Department of State to verify the position of the United States Government with respect to each paper. The outcome of this effort will determine the possibility of requesting a review and redetermination of the classification of some or all of the documents by the British Government. This Department will continue on its present course of coordi-

nating the declassification of the files with the concerned agencies. The complexity of interests in these files indicates considerable time will pass before a final determination is made. In the meantime, the documents remain classified TOP SECRET * *."

The District Court granted summary judgment in favor of appellees. 296 F. Supp. 214 (N.D.Cal.1969). The American Civil Liberties Union of Northern California, as amicus curiae, appears in support of appellant.

The appeal presents a question as to the scope of judicial review. Section 552(a) (3) provides that "the court shall determine the matter de novo and the burden is on the agency to sustain its action."

Appellees insist, however, that this subsection does not apply here. They point to § 552(b) which states that "[t]his section does not apply to matters" in nine enumerated categories.[2] Appellees contend that agency determination that the material sought falls within one of the nine exempted categories takes the case out of subsection (a) (3) and precludes the broad judicial review provided by that subsection. They assert that we are here faced with an agency determination that the (b) (1) exemption applies.

Unquestionably the Act is awkwardly drawn. However, in view of the legislative purpose to make it easier for private citizens to secure Government information, it seems most unlikely

2. "(1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which

would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells."

that it was intended to foreclose an (a) (3) judicial review of the circumstances of exemption. Rather it would seem that (b) was intended to specify the bases for withholding under (a) (3) and that judicial review de novo with the burden of proof on the agency should be had as to whether the conditions of exemption in truth exist. *See* American Mail Line, Ltd. v. Gulick, 133 U.S.App. D.C. 382, 411 F.2d 696, 702 (1969). The District Court was, then, in error in holding to the contrary, 296 F.Supp. at 217.

This being so, appellant argues, the District Court should have taken the file for a determination *in camera* as to whether, under (b) (1) and the applicable executive standards, this file should, after twenty-four years, still be classified as "top secret" in the interests of the national defense or foreign policy.

Here we part company with appellant.

 Section (b) (1) is couched in terms significantly different from the other exemptions. Under the others (with the exception of the third) the very basis for the agency determination —the underlying factual contention—is open to judicial review. *See* General Services Administration v. Benson, 415 F.2d 878 (9th Cir. 1969); American Mail Line, Ltd. v. Gulick, 133 U.S.App. D.C. 382, 411 F.2d 696, 702 (1969). Under (b) (1) this is not so. The function of determining whether secrecy is required in the national interest is expressly assigned to the executive. The judicial inquiry is limited to the question whether an appropriate executive order has been made as to the material in question.

 This is not inconsistent with the legislative purpose. It simply recognizes the proposition that the question of what is desirable in the interest of national defense and foreign policy is not the sort of question that courts are designed to deal with. As has been stated, the judiciary has neither the "aptitude, facilities, nor responsibility" to review these essentially political decisions. Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948); *see also* United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320–322, 57 S.Ct. 216, 81 L.Ed. 255 (1936).

Upon the narrow question remaining for judicial review, we note that the executive determination of top secret classification does not rest on an ancient order unrelated to the conditions of today. The classification has been updated and the process of current review is continuing. Nor is the agency hiding material under a filing system that gives top-secret classification to material simply because it relates, for filing purposes, to other material that is truly top secret. A paper-by-paper review was in operation in May, 1968. Nor do we find a foot-dragging passing of responsibility for ordering declassification to other departments or nations. The Army has reached a decision and is seeking verification by the Joint Chiefs of Staff and the Department of State. Intercession with the British Government would, we are assured, follow a favorable decision by the agencies of the United States.

 The District Court ruled that under (b) (1) it had authority to determine whether classification was arbitrary or capricious. It held that upon appellees' showing, classification could not be so characterized. In both respects we agree with the court's rulings. Further we agree that judicial inquiry into this narrow area does not, at least in this case, warrant *in camera* examination of the file.

The origin of the file's contents itself is sufficient to dispel any suggestion that the original classification was arbitrary or capricious. While the passage of time may cast doubt on the continuing need for secrecy, appellees have made more than a sufficient showing that questions bearing on that need persist and require resolution by the executive.

We conclude that subsection (b) (1) has been shown by the Army to apply and to justify withholding the material in question.

Judgment affirmed.